**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TORUS VENTURES, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:25-CV-00102-JRG |
| | § | |
| v. | § | PATENT CASE |
| | § | |
| BRINKER INTERNATIONAL, INC., | § | LEAD CASE |
| | § | |
| Defendant. | § | |
| | § | |
| TORUS VENTURES, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:25-CV-00138-JRG |
| | § | |
| SHA, LLC, | § | PATENT CASE |
| | § | |
| Defendant. | § | MEMBER CASE |

**DEFENDANT SHA, LLC'S RULE 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. Procedural Background........ 2
B. Overview of the ’844 Patent ........ 2

III. LEGAL STANDARD........ 3

IV. ARGUMENT ........ 4

A. Claim 1 is Representative of All Claims........ 4
B. Alice Step One: Claim 1 is Directed to the Abstract Idea of Multi-Level Encryption. ........ 5
C. Alice Step Two: Claim 1 has No Inventive Step. ........ 7
D. No Claim Construction or Factual Disputes Prevent the Court from Granting the Motion with Prejudice. ........ 9

V. CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016)........................................................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014)..............................................................................................3, 7

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016)........................................................................................4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)........................................................................................8

*Bridge and Post, Inc. v. Verizon Comm'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ..............................................................................7, 9

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)........................................................................................5

*ChargePoint v. SemaConnect*,
920 F.3d 759 (Fed. Cir. 2019)..........................................................................................3

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017)........................................................................................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014)....................................................................................4, 5

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ....................................................................................6

*Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020)........................................................................................3

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)........................................................................................8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)........................................................................................8

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)........................................................................................7

*Sanderling Management Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ..........................................................................................9

*SAP Am. Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)........................................................................................3

*Two-Way Media Ltd. V. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)........................................................................................8

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 2707 (2022) ....................1, 5, 6, 7

*Western Digital Techs., Inc. v. Viasat, Inc.*,
2023 WL 7739816 (N.D. Cal. 2023) ....................6

**Statutes**

35 U.S.C. § 101 .................... passim

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................3

## I. INTRODUCTION

U.S. Patent No. 7,203,844 (the "'844 patent") is a now-expired patent that Torus Ventures, LLC ("Torus") recently asserted against dozens of businesses, including SHA, LLC ("SHA"). The claims recite nothing more than a few steps for encrypting data using "industry standard security technologies," and are therefore ineligible for patent protection under 35 U.S.C. § 101. *See* '844 patent at 2:40-46; *see also id.* at 28:6-10 (explaining that the "security protocol described herein is based on publicly known algorithms").

First, the claims relate to the abstract idea of employing two encryption steps that use conventional algorithms. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1357-58 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 2707 (2022). "[T]he claimed idea of using three or more conventional authentication techniques to achieve a higher degree of security is abstract." *Id.* at 1357. Likewise, conventional encryption is abstract as it is "conventional data . . . that achieves only expected results." *Id.* at 1352. The same is true here. The '844 patent uses well-known, standard techniques to encrypt data across two steps; thus the claims are abstract.

Second, the claims do not recite an inventive concept. To begin, the abstract idea itself cannot form the inventive concept. *Universal Secure Registry*, 10 F.4th at 1350. Moreover, using standard encryption techniques to perform two encryption steps does not impart an inventive concept to the claims. *Id.* at 1358 (finding no inventive concept because "nothing in the claims is directed to a new authentication technique; rather, the claims are directed to combining long-standing, known authentication techniques to yield expected additory amounts of security.").

Neither claim construction nor additional allegations in an amended complaint change this result. Further litigation would be a waste of judicial and party resources, and thus SHA requests that the Court grant its Motion to dismiss the Complaint with prejudice.

## II. STATEMENT OF FACTS

### A. Procedural Background

Torus filed patent lawsuits against SHA and several others over the course of February 2025. On March 7, 2025, SHA filed, and the Court granted, an unopposed motion to extend its answer date to April 25, 2025. On April 2, 2025, the Court consolidated dozens of Torus cases and designated the *Brinker* case, Case No. 2:25-cv-00102, as lead. *See* Dkt. 10 in Lead Case. The Court then set a scheduling conference for May 28, 2025, along with several other deadlines. Dkt. 39. A number of similar Motions to Dismiss under 35 U.S.C. § 101 have been filed, but the merits have not yet been considered by the Court.

### B. Overview of the '844 Patent

The '844 patent relates to "the protection of digital data through the use of encryption." '844 patent at 1:16-18. As the background of the '844 patent admits, there are several "well known technologies" for encrypting data, including hashing, message digests, message authentication systems, digital signatures, secret key encryption systems, and public key encryption systems. *Id.* at 2:9-16. Thus, the security protocols recited in the '844 patent claims "may utilize industry standard security technologies and other types of security standards." *Id.* at 2:43-45; *see also id.* at 5:57-59 (explaining that security protocols are "the basis of a large number of industry-standard encryption algorithms"). For this reason, the '844 patent fails to describe specific encryption techniques in detail, noting that "[d]escriptions of well known starting materials, process techniques, components and equipment are omitted . . ." *Id.* at 4:1-3. The '844 patent then closes by explaining that "the security protocol described herein is based on ***publicly known algorithms*** . . . [and] could ostensibly be accomplished by any ***general purpose computing device***." *Id.* at 28:6-10 (emphasis added).

The three claim sets[1] are all very similar, and fail to recite any specific encryption technologies or related structure. Instead, they all recite the generic steps of encrypting a bitstream with an "encryption algorithm" and associating that algorithm with the bitstream. *See, e.g.,* claim 1 of the '844 patent at 29:16-25. The claimed bitstream is any digital data that "can be reduced to a stream of 1's and 0's." *Id.* at 2:31-32. And the claimed encryption algorithm can be any "well-known" or "industry standard" algorithm. *See e.g., id.* at 2:9-16; 13:29-31; 28:6-9. Similarly, the dependent claims call out specific "well-known" and "industry standard" features like keys, timestamps, digital signatures, and message authentication codes. *Id.*

## III. LEGAL STANDARD

Invalidity under § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *ChargePoint v. SemaConnect*, 920 F.3d 759, 765-66 (Fed. Cir. 2019). The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020) (citation omitted).

In *Alice*, the Supreme Court set forth a two-step test for assessing patent eligibility under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). In step one, the Court determines whether the claims "are directed to a patent-ineligible concept," such as an abstract idea. *Id.* If the claims are directed to an abstract idea, the Court then moves to step two, where it determines whether there is an "inventive step." *Id.*

---

[1] Claim 1 and its dependent claims 2-18; claim 19 and its dependent claims 20-36; and claim 37 and its dependent claims 38-54.

## IV. ARGUMENT

### A. <u>Claim 1 is Representative of All Claims.</u>

Claim 1 of the ’844 patent is representative of all claims for purposes of a § 101 analysis. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (assessing eligibility based on representative claims that are “substantially similar and linked to the same” ineligible concept) (internal quotation marks omitted); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding 242 claims ineligible on the pleadings based on two representative claims because all were “substantially similar and linked to the same abstract idea.”). Here, all of the ’844 independent claims are identical apart from the preamble and all are linked to the same abstract idea of two encrypting steps using well-known algorithms. *See, e.g.,* ’844 patent claim 1 (method) at 29:15-25; claim 19 (system) at 30:6-17; and claim 37 (computer storage device with executable instructions) at 30:64-31:7.

The dependent claims also add nothing to the § 101 analysis. They are nearly identical among each claim set, and only add similarly abstract, non-inventive concepts:

- Decrypting the bit streams with a target unit (claims 2, 20, 38);
- Using a key (with various features) to decrypt the bit streams (claims 3-11, 21-29, 39-48); and
- Using message authentication codes or digital signatures and/or verifying the bit stream using the codes/signatures (claims 12-18, 30-36, 49-54).

None of these limitations are directed to an inventive concept. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) (finding that “appending [] preexisting practice[s] to [] independent claims does not make them patentable.”). In fact, the ’844 patent explains that the

dependent claim features are part of "industry-standard encryption algorithms" ('844 patent at 5:55-59) and "may utilize industry standard security technologies and other types of security standards" (*id.* at 2:40-46). The '844 specification lists message authentication, digital signatures, and key encryption systems as "well-known" and "widely described" technologies. *Id.* at 2:9-16. The '844 specification also describes the "details of the key exchange procedure" as "well known." *Id.* at 13:29-31. In short, "the security protocol described herein is based on ***publicly known algorithms*** . . ." *Id.* at 28:6-10 (emphasis added). In addition, the '844 specification describes the "target unit" as the "device" or "hardware" that runs the security protocol. *Id.* at 6:4-7. However, the '844 specification states that this device is "any general purpose computing device." *Id.* at 28:6-10. As a result, the dependent claims have no impact on the § 101 analysis, and independent claim 1 is representative of all claims. *See Content Extraction*, 776 F.3d at 1347; *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288-89 (Fed. Cir. 2018).

### B. Alice Step One: Claim 1 is Directed to the Abstract Idea of Multi-Level Encryption.

The '844 patent claims recite two steps of encrypting data using conventional algorithms, which is a quintessential abstract idea. As the Federal Circuit has explained, claims are abstract where they "simply recite conventional actions in a generic way without purporting to improve the underlying technology." *Universal Secure Registry*, 10 F.4th at 1357. That is exactly the case here. Torus claims two encryption steps that use conventional "encryption algorithm[s]" in a generic way without purporting to improve the underlying technology. Torus does not define the algorithms and the '844 patent repeatedly states that the algorithms are well-known and industry standard. *See* '844 patent at 5:55-59 (explaining that claimed inventions use "industry-standard encryption algorithms"); *see also id.* at 2:40-46 (explaining that the claimed inventions "may utilize industry standard security technologies and other types of security standards"); *id.* at 2:9-

16 (listing hashing, message authentication, digital signatures, and key encryption systems as "well-known" and "widely described" technologies). Again, the '844 patent concludes that "the security protocol described herein is based on ***publicly known algorithms*** . . . [and] could ostensibly be accomplished by any ***general purpose computing device***." *Id.* at 28:6-10 (emphasis added). Thus, "[w]ithout some unexpected result or improvement, the claimed idea of using [multiple] . . . conventional authentication techniques to achieve a higher degree of security is abstract." *Universal Secure Registry*, 10 F.4th at 1357 (emphasis added).

As in *Universal Secure Registry*, there is no unexpected result or improvement in performing two encryption steps using well-known encryption algorithms. The algorithms are conventional, they are used in a conventional way (i.e., applied to a bitstream of digital data), and they achieve the expected result (i.e., encrypting the data). The '844 patent uses standard hardware to perform the encryption steps. Thus, the combination of two encryption steps on a general-purpose computer provides only the "expected sum of the security benefits of each individual [] technique," and has no unexpected result or improvement. *Id.* at 1358. The '844 claims are directed to an abstract idea.

*Universal Secure Registry* does not stand alone in holding that traditional encryption/authentication techniques fail to pass step one of the *Alice* analysis. As another example, the Federal Circuit found the "encryption method[s]" claimed in Dropbox's patent were also abstract. *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 532-534 (Fed. Cir. 2020) (holding that the claimed "encryption trust level" failed to provide a "technological solution" and was therefore abstract). The same is true of *Western Digital*, where the court held that decrypting data was an abstract idea because it invoked generic processes and machinery. *See Western Digital Techs., Inc. v. Viasat, Inc.*, 2023 WL 7739816, *3-6 (N.D. Cal. 2023); *see also*

*Bridge and Post, Inc. v. Verizon Comm'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019) (holding that claims for encryption techniques were "not eligible for patenting" because they were directed to an abstract idea). Claim 1 and nearly-identical claims 19 and 37 are therefore directed to an abstract idea.

To the extent the Court separately considers the dependent claims, they do not change the result. Again, each of the dependent claims recite a generic, conventional aspect of the encryption/decryption process. *See* Section IV.A. For the same reasons noted above for claim 1, the dependent claims are also directed to abstract ideas.

### C. <u>Alice Step Two: Claim 1 has No Inventive Step.</u>

"To save a patent at step two, an inventive concept must be evident ***in the claims***." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added). The "inventive concept . . . must be significantly more than the abstract idea itself." *Universal Secure Registry*, 10 F.4th at 1350 (citations omitted). Moreover, "purely functional" elements cannot confer eligibility, nor can "well-understood, routine, conventional activit[ies] previously known in the industry." *Alice*, 134 S. Ct. at 2359-60.

Claim 1 fails to contain an inventive concept under this rubric. Instead, it simply recites generic, results-oriented, functional language to achieve a purported solution. More specifically, claim 1 (1) encrypts a first bitstream with a first algorithm, (2) associates a decryption algorithm with the first bitstream, (3) encrypts the first bitstream and decryption algorithm with yet another encryption algorithm to form a second bitstream, and (4) associates a second decryption algorithm with the second bitstream. *See* '844 patent at 29:16-25. Claim 1 offers only a generic encryption algorithm applied to a generic bitstream using a general-purpose computing device. This generic, functional claim language is not enough to confer eligibility. *See Alice*, 134 S. Ct. at 2358-60;

*Two-Way Media Ltd. V. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (holding that "merely reciting an abstract idea performed on a set of generic computer components . . . would 'not contain an inventive concept'") (citations omitted). "At that level of generality, the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). For the same reasons, the '844 claims contain no inventive concept.

The '844 patent admits there is no inventive concept captured in the claims. Rather, the specification repeatedly states that the encryption algorithms, keys, digital signatures, and other claimed elements are "publicly known," "industry standard," and "could ostensibly be accomplished by any general purpose computing device." *See, e.g.,* '844 patent at 28:6-10; *see also id.* at 2:40-46; 5:35-38; 13:29-31. As a result, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, convention computer . . . technology" and thus the claims cannot contain an inventive concept. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). Whether "taken individually or in combination, the recited limitations neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (holding the claims lacked an inventive concept because they recited "no more than performing the abstract idea of parsing and comparing data with conventional computer components."). The '844 claims fail to recite an inventive concept and are therefore patent-ineligible under § 101.

### D. <u>No Claim Construction or Factual Disputes Prevent the Court from Granting the Motion with Prejudice.</u>

Torus agrees that claim construction is unnecessary to resolve this Motion. In addition, Torus cannot add any allegations to the Complaint that would impact resolution of this Motion. The '844 specification establishes that the claims provide no technological improvement. *See supra* at pp. 2-3, 5-8. As such, Torus cannot plausibly allege the opposite in any amended complaint. *See, e.g., Sanderling Management Ltd. v. Snap Inc.*, 65 F.4th 698, 705-06 (Fed. Cir. 2023) (holding that "[n]o amendment to a complaint can alter what a patent itself states")*; see also Bridge & Post*, 778 F. App'x at 894 (holding that even where a complaint characterizes inventions as "technical innovations," courts are "not required to accept [a plaintiff's] legal conclusions as true, even if couched as factual allegations"). In other words, even if Torus sought leave to add allegations that the '844 patent was inventive and/or did not use well-known, routine, or conventional technology, the court is "not required to credit such conclusory allegations." *Sanderling*, 65 F.4th at 706. As in *Bridge & Post*, *Sanderling*, and numerous other cases, the Complaint does not, and cannot, plausibly allege facts showing § 101 eligibility. As such, the Complaint should be dismissed with prejudice.

## V. CONCLUSION

The '844 patent claims only require the use of traditional encryption techniques by a conventional, general purpose computer. They are therefore directed to abstract ideas that contain no inventive concept. No potential amendment or claim construction changes that result. Thus, SHA respectfully requests that the Court grant its Motion to Dismiss with prejudice.

Dated: April 25, 2025

Respectfully submitted,

By: /s/ Ashley N. Moore
Ashley N. Moore
Texas Bar No. 24074748
Ashley.moore@gtlaw.com
Peter S. Wahby
Texas Bar No. 2401171
Peter.wahby@gtlaw.com
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
214-665-3600 (telephone)
214-665-3601 (facsimile)

**COUNSEL FOR DEFENDANT SHA, LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 25, 2025 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Ashley N. Moore
Ashley N. Moore

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER**

**XXX** The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

_____ The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

/s/ Ashley N. Moore
Ashley N. Moore